## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| **FAIRCHILD SEMICONDUCTOR** | ) | |
| **CORPORATION,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 08-158-P-H** |
| | ) | |
| **THIRD DIMENSION (3D)** | ) | |
| **SEMICONDUCTOR, INC.,** | ) | |
| | ) | |
| **Defendant** | ) | |

## MEMORANDUM DECISION AND ORDER
## ON DEFENDANT'S MOTION TO COMPEL AND FOR SANCTIONS

On December 8, 2008, the defendant filed a motion seeking to compel the continued deposition of Dr. Jaegil Lee and for sanctions predicated on the plaintiff's counsel's alleged obstruction of the September 9, 2008, Lee deposition and the plaintiff's alleged failure to produce in a timely fashion documents related to its so-called "Trench Parts" or "SupreMOS" products. *See* Third Dimension Semiconductor, Inc.'s Motion To Compel the Continuation of Dr. Lee's Deposition and for Sanctions Against Fairchild Semiconductor, Corp. ("Motion") (Docket No. 144).[1]  During a teleconference with counsel held on December 18, 2008, I denied the Motion.  I now memorialize and explain my decision.

---

[1] Throughout this decision, I will use the terms "Trench Parts" and "SupreMOS" parts or products interchangeably.

## I. Factual Background

On May 17, 2008, the plaintiff filed the instant suit, seeking a declaratory judgment, *inter alia*, that it does not infringe any claim of any of four patents referenced in the parties' Patent License Agreement ("Agreement"), that it has no obligation to pay royalties pursuant to the Agreement, and that the Agreement has not been breached. *See* Complaint for Declaratory Judgment ("Complaint") (Docket No. 1) at 3, 7. The plaintiff alleged that the patents in question generally purport to cover particular constructions of semiconductor power devices known as metal-oxide-semiconductor field-effect transistors, or MOSFETs, and that the defendant had begun asserting in March 2007 that certain of the plaintiff's MOSFET devices sold under the trade name SuperFET were licensed products requiring payment of royalties pursuant to the Agreement. *See id.* ¶¶ 7, 12. The plaintiff disputed that royalties were owed. *See id.* ¶ 13. The parties had been unable to resolve their disagreement amicably, and on April 24, 2008, the defendant had given notice pursuant to the Agreement that it intended to terminate the Agreement effective 60 days from April 25, 2008. *See id.* ¶¶ 14-15.

On June 20, 2008, the plaintiff filed a motion seeking a temporary restraining order ("TRO") and preliminary injunction enjoining the defendant from terminating the Agreement. *See* Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Docket No. 16). Dr. Lee, a senior manager of HV MOSFET concepts at Fairchild Korea Semiconductor Ltd., submitted a declaration in support of that motion in which he averred, *inter alia*, that he has been the main designer of SuperFET semiconductor products since August 2001 and that his responsibilities include generating new MOSFET concepts and translating those concepts into active devices. *See* Declaration of Jaegil Lee in Support of Plaintiff's Motion for Temporary Restraining Order and

Preliminary Injunction (Docket No. 19) at 1.  Following a hearing before Judge Hornby on July 1,

2008, the court on July 8, 2008 issued the requested TRO.  *See* Docket Nos. 26, 28.

On July 21, 2008, the defendant served on the plaintiff a set of requests for production

seeking various documents related to SuperFET products or parts.  *See* Third Dimension

Semiconductor, Inc.'s First Set of Requests for Production to Fairchild Semiconductor Corporation

("First RFP"), Exh. 3 to Declaration of Patrick J. Conroy in Support of Third Dimension

Semiconductor, Inc.'s Motion To Compel the Continuation of Dr. Lee's Deposition, and for

Sanctions Against Fairchild Semiconductor, Corp. ("Conroy Decl.") (Docket No. 142), ¶¶ III(3-9).

For purposes of the First RFP, the defendant defined SuperFET products or parts as "the

SuperFET™ devices Fairchild references in its Complaint[.]"  *Id.* ¶ I(11).  The Complaint described

the plaintiff's SuperFET products as "certain Fairchild MOSFET devices sold under the trade name

SuperFET™[.]"  Complaint ¶ 12.  The First RFP also sought, in relevant part, "[a]ll documents in

[y]our possession, custody, or control that relate to, tend to prove, or disprove your claim that you

will suffer immediate and irreparable harm if the License Agreement is terminated."  First RFP

¶ III(11).

In response to the First RFP, the plaintiff produced thousands of pages of SuperFET-related

documents.  Among those, the plaintiff represents that, between August 28 and September 5, 2008, it

produced approximately 260 documents totaling more than 2,000 pages that happened also to

mention Trench Parts or SupreMOS devices.  *See* Plaintiff's Opposition to Defendant's Motion To

Compel the Continued Deposition of Jaegil Lee and Motion for Sanctions ("Opposition") (Docket

No. 147) at 6.  The plaintiff explains that it did not redact pages in those documents to remove

reference to the latter SupreMOS devices.  *See id.*  At the teleconference on December 18, the

3

defendant's counsel disputed that these documents provided any clear picture of the plaintiff's development or production of SupreMOS devices, although he acknowledged that at least one document containing meeting notes in Korean, provided only three days before the deposition of Dr. Lee, mentioned SupreMOS, and another document listed part numbers for SupreMOS products for the following year.

The deposition of Dr. Lee via Korean interpreter took place in Portland, Maine, on September 9, 2008, from 10 a.m. to 6:27 p.m. *See* Oral and Videotape Deposition of: Jaegil Lee ("Lee Dep."), Exh. 4 to Conroy Decl., at 4, 170. During the deposition, the defendant's counsel inquired whether the plaintiff "ever tried to develop a trench superjunction device[.]" *Id*. at 119.[2] Dr. Lee responded, "Yes, we – we are doing it." *Id*. He affirmed that the plaintiff expected to have a trench superjunction part within 12 months, and that some samples of the part already had been sent out to customers. *See id*. He testified that SuperFET developers, including himself, were working on the project. *See id*. at 120.

When Dr. Lee balked at answering further detailed questions about the Trench Parts or SupreMOS devices, the plaintiff's counsel challenged the relevance of the line of inquiry. *See id*. at 122-23. Nonetheless, after taking a break to speak to Dr. Lee, the plaintiff's counsel returned and permitted Dr. Lee to answer questions pertaining to it. *See, e.g., id*. at 124-38. On several occasions, he affirmatively instructed Dr. Lee to answer the defendant's counsel's questions. *See, e.g., id*. at 12-13, 105-06, 121.

---

[2] The parties agree that the plaintiff's SupreMOS device is a trench superjunction device.

In all, by my reckoning, the plaintiff's counsel lodged approximately 105 objections during the day-long Lee deposition.  On six of those occasions, he instructed Dr. Lee not to answer a question, in each case to the extent that the response would reveal privileged attorney-client communications.  While the plaintiff's counsel made perhaps three objections that might be classified as "speaking" objections, the vast majority of his objections (96 by my count) consisted of the single word "objection" or the word "objection" followed by a brief statement of the basis therefor.

On September 15, 2008, the defendant's counsel e-mailed the plaintiff's counsel, requesting, in light of Dr. Lee's testimony concerning manufacture of samples of Trench Parts, that the plaintiff "supplement [its] document production promptly with documents responsive to 3D's Requests related to the semiconductor products that Dr. Lee testified to[.]"  Exh. 5 to Conroy Decl.  On September 30, 2008, the plaintiff's counsel responded that any such documents were not within the scope of the First RFP.  *See* Exh. 6 to Conroy Decl.  That day, the defendant's counsel replied: "I think it is reasonable to have considered/consider the 09/15 RFP a separate RFP, which 3D is still entitled to under the Court's Preliminary Injunction Scheduling Order."  *Id.*

On October 2, 2008, the plaintiff's counsel made clear that his client did not consider this reasonable, responding, *inter alia*, that it was "Fairchild's position that (1) such documents are not responsive to any request for production, and (2) would not be relevant to any issue in the lawsuit. Fairchild has not sold, or offered to sell, any 'superjunction trench parts' and therefore, such parts could not be considered 'Licensed Products' or products infringing the '275 patent."  *Id.*  The

defendant's counsel responded that his client disagreed and intended to seek a court ruling on the matter. *See id.*

At about this time, the plaintiff filed a motion to compel the continued deposition of another witness, Samuel Anderson, and for sanctions. I granted the plaintiff's motion during a teleconference with counsel held on October 17, 2008. *See* Report of Hearing and Order re: Discovery Dispute (Docket No. 84). I found that during the Anderson deposition, held in California on September 16, 2008, the defendant's counsel had (i) made several improper "speaking" objections in violation of the admonition of Federal Rule of Civil Procedure 30(c)(2) that objections "must be stated concisely in a nonargumentative and nonsuggestive manner"; (ii) instructed the witness not to answer the plaintiff's counsel's questions on more than 20 occasions during the course of a roughly half-day-long deposition, including on eight occasions following a teleconference with me early in the deposition during which the Rule was discussed and on six occasions following a teleconference with Magistrate Judge Kravchuk later in the deposition during which she admonished the defendant's counsel, *inter alia*, to give instructions not to answer sparingly; and (iii) supplied, on most of those occasions, an improper basis for the instruction not to answer, including relevance. *See id.* at 2.

Turning back to the instant dispute, on or about October 23, 2008, in response to an interrogatory, the plaintiff stated that it would suffer immediate and irreparable harm if the Agreement were terminated because, *inter alia*, "termination would deprive Fairchild of the benefit of the covenant not to sue for infringement of the Licensed Patents upon its sale of trenched superjunction devices." Plaintiff Fairchild Semiconductor Corporation's Answers to Defendant Third Dimension . . . Semiconductor, Inc.'s First Set of Interrogatories Nos. 1 Through 8, Exh. 7 to

Conroy Decl., at 6, 8.

In view of that response, which the defendant considered "an about-face on the relevancy of the Trench Parts[,]" the defendant drafted and served on the plaintiff on October 27, 2008, a courtesy copy of an earlier version of the instant Motion, requesting that the parties meet and confer. *See* Motion at 2, 12. In a teleconference with the defendant's counsel, the plaintiff's counsel asserted that the interrogatory response was a mistake. *See* Conroy Decl. ¶ 4. The plaintiff's counsel agreed to produce documents related to the Trench Parts, but declined to produce Dr. Lee for another deposition. *See id.* On or about October 29, 2008, the plaintiff filed corrected interrogatory responses omitting sale of the Trench Parts as a basis for its claim that it would suffer immediate and irreparable harm if the Agreement were terminated. See Exh. 8 to Conroy Decl.

The plaintiff's counsel represents that the first sales of the plaintiff's SupreMOS devices were made on October 25, 2008. *See* Opposition at 4 n.4. During the December 18 teleconference, the defendant's counsel disputed that fact, offering to provide documents *in camera* that he asserted would show sales of samples had commenced at an earlier time.

On or about November 18, 2008, the plaintiff produced to the defendant approximately 1,680 additional Trench Parts-related documents, *see* Opposition at 7, which the plaintiff's counsel represented during the teleconference totaled about 19,000 pages.

The defendant filed the instant Motion with the court on December 8, 2008, supported by Conroy's declaration and nine exhibits. *See* Docket Nos. 142-44. In accordance with my direction, the plaintiff filed its written response on December 12, 2008. *See* Docket No. 147. As noted, I held a teleconference with counsel on December 18, 2008.

## II.  Discussion

Although requested sanctions were not specified in its papers, the defendant clarified during the December 18 teleconference that it sought an order compelling the plaintiff to produce Dr. Lee for further deposition in Dallas, Texas, at the plaintiff's expense as a sanction for the plaintiff's counsel's alleged obstruction of the September 9 Lee deposition and the plaintiff's alleged failure to produce in a timely fashion documents related to its so-called "Trench Parts" or SupreMOS products.  The defendant's counsel suggested, *inter alia*, that the conduct of the plaintiff's counsel at Dr. Lee's deposition was comparable to his own conduct at the September 16 Anderson deposition, which I concluded warranted sanctions.

### A.  Alleged Obstruction of Dr. Lee's Deposition

I am satisfied, upon careful review of the Lee deposition transcript, that the plaintiff's counsel's conduct during that deposition differs materially from that of the defendant's counsel during the Anderson deposition and that the plaintiff's counsel did not obstruct the defendant's examination of Dr. Lee.

First and foremost, whereas the defendant's counsel instructed Anderson not to answer on more than 20 occasions during a half-day deposition, primarily on impermissible grounds such as relevance, the plaintiff's counsel instructed Dr. Lee not to answer on only six occasions during that day-long deposition, each time on the legitimate ground that the witness not reveal the contents of privileged attorney-client communications.  *See* Fed. R. Civ. P. 30(c)(2) ("A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).").  In fact, on several occasions, the

8

plaintiff's counsel facilitated the orderly deposition of Dr. Lee by instructing the sometimes reluctant witness to answer the defendant's counsel's questions.

Secondly, while the plaintiff's counsel made perhaps three objections that might be classified as "speaking" objections, the vast majority of his objections (96 by my count) consisted of the single word "objection" or the word "objection" followed by a brief statement of the basis therefor.  Such objections comply with the mandate of Rule 30(c)(2) that an objection be "stated concisely in a nonargumentative and nonsuggestive manner."  *See also Breaux v. Haliburton Energy Servs.*, Civil Action Nos. 04-1636 c/w 05-0896, 05-0897, 2006 WL 2460748, at *3 (E.D. La. Aug. 22, 2006) ("[I]t is common to refer to objections that are argumentative or which suggest an answer to the witness as 'speaking objections.'  These 'speaking objections' are prohibited during depositions. Under this Rule counsel's statements when making objections should be succinct and verbally economical, stating the basis of the objection and nothing more.") (citations and internal punctuation omitted).

Thirdly, and tellingly, the defendant failed to identify, either in its papers or during oral argument, any question regarding the Trench Parts or SupreMOS products, or any other matter, that it was prevented from asking or that Dr. Lee was obstructed from answering during the September 9 deposition.

The allegation that the plaintiff's counsel obstructed Dr. Lee's deposition is without merit.

## B.  The Alleged Untimely Production of Documents

The defendant's quest for sanctions predicated on the plaintiff's alleged untimely production of documents fares no better.  The gravamen of the Motion, insofar as document production is concerned, is that the defendant lacked SupreMOS-related documents in time to use them to prepare

for the Lee deposition despite having requested the same.  But, the defendant served only one request for production of documents, the First RFP, upon the plaintiff prior to the deposition of Dr. Lee.  And, the First RFP cannot fairly be read to seek SupreMOS-related documents.  That by itself is dispositive of the question of whether the plaintiff committed sanctionable conduct in omitting to provide those documents to the defendant prior to the deposition of Dr. Lee.

In the main, the First RFP sought documents specifically related to the plaintiff's SuperFET products as that term was defined in the Complaint.  There is no evidence that SupreMOS products are or ever were sold under the separate trade name "SuperFET."  The defendant asserts that, "[w]hile somewhat unclear from the testimony, Dr. Lee seems to indicate that the Trench Parts are a sub-class of SuperFET parts[.]"  Motion at 6 n.15.  Dr. Lee testified that SuperFET designers were working on Trench Parts.  However, he did not suggest that SupreMOS parts were marketed under the separate trade name SuperFET.  To the extent that the First RFP requested documents pertaining to SuperFET, it simply cannot fairly be construed to request SupreMOS-related documents.

As the defendant points out, *see* Motion at 5, the First RFP also sought "[a]ll documents in [y]our possession, custody, or control that relate to, tend to prove, or disprove your claim that you will suffer immediate and irreparable harm if the License Agreement is terminated[,]" First RFP ¶ III(11). Yet, at the time of the Lee deposition, the plaintiff did not predicate any claim that it would suffer immediate and irreparable harm on its SupreMOS products, which it represents were not then even being sold commercially.  The plaintiff, therefore, had no obligation to disclose SupreMOS-related documents in response to that request.

The defendant makes much of the fact that the plaintiff admitted, in its initial response to the defendant's interrogatories, that it did indeed predicate a claim of immediate and irreparable harm on

sale of the Trench Parts. *See* Motion at 11-12, 14-15. Yet that mistaken response, filed more than a month after the Lee deposition, has no bearing on the narrow question before me, namely, whether sanctionable conduct occurred in reference to that deposition. In any event, the plaintiff promptly corrected its erroneous interrogatory response, as was its right and obligation, upon discovery of the error. *See* Fed. R. Civ. P. 26(e)(1)(A) ("A party who has . . . responded to an interrogatory . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect[.]"). The defendant's intimation that the plaintiff somehow is bound by its earlier mistaken interrogatory response, *see* Motion at 11-12, 14-15, falls particularly wide of the mark given that the plaintiff is the master of its own claims. Even had the plaintiff intentionally pressed such a claim at an earlier date, it could have elected to withdraw it at a later date.

The defendant argues, as well, that it transmitted a second, specific request for production of SupreMOS documents via its e-mail of September 15, 2008, which the plaintiff refused to honor in a timely fashion. *See* Motion at 11. This alleged second request, made after the Lee deposition, again has no bearing on the narrow question before me, limited as it is to the conduct at or before the deposition. In any event, the plaintiff properly refused to acknowledge the defendant's e-mail as a stand-alone request for production of documents. In that e-mail, the defendant did not directly request the Trench Parts documents; rather, it asked the plaintiff to supplement its production with documents that the defendant asserted were responsive to the First RPF. In addition, the e-mail request did not comply with the requisites of Federal Rule of Civil Procedure 34, pursuant to which a request for production of documents must "describe with reasonable particularity each item or

category of items to be inspected" and "specify a reasonable time, place, and manner for the inspection and for performing the related acts[.]" Fed. R. Civ. P. 34(b)(1)(A)-(B).

Beyond this, the defendant did not go into the Lee deposition blind with respect to the issue of the plaintiff's possible production of Trench Parts or SupreMOS devices. In responding to the First RFP, the plaintiff produced approximately 260 documents, totaling more than 2,000 pages, that alluded in some fashion to its research and development of the Trench Parts or similar devices by itself and others. During the teleconference, the defendant's counsel contended that these documents either were unenlightening or were produced too late to be useful in his preparation, and that he knew to ask about the plaintiff's possible production of Trench Parts only because he was able to make an educated guess based on his personal expertise in the MOSFET business. Nonetheless, the fact remains that he was able to, and did, ask Dr. Lee a number of questions regarding Trench Parts, questions to which he received answers.

To the extent that the defendant suggests that the plaintiff impeded the Lee deposition or the timely production of documents by improperly concealing the fact of its development and sale of the Trench Parts, the Trench Parts were not in fact relevant as of the date of Dr. Lee's deposition. The plaintiff seeks, in the main, relief in the form of a declaratory judgment that (i) it does not infringe any claim of any of the licensed patents, (ii) does not owe royalties, and (iii) is not in breach of the Agreement. As Judge Hornby recently observed, because, under the Agreement, the plaintiff is licensed to sell products covered by the patents, and the defendant has covenanted not to sue or assert any claim for infringement against the plaintiff, there can be no infringement of the licensed patents as long as the license is in effect. *See* Decision and Order on Motions To Dismiss (Docket No. 146) at 5. At the time of the Lee deposition, and today, the plaintiff is enjoined by the TRO

12

from terminating the Agreement.  Nor, pursuant to the Agreement, is any issue as yet ripe regarding payment or non-payment of royalties on sales of the SupreMOS parts.  While the defendant disputes the plaintiff's claim that no such parts were sold commercially until October 25, 2008, it has not suggested that such parts were sold prior to 2008.  Per the Agreement, no royalties would be due and owing on any such parts sold in 2008 until the end of February 2009, at the earliest.  *See* Agreement, Exh. 1 to Conroy Decl., §§ 1(D), 4(D).

### C.  Scope of Ruling; Plaintiff's Request for Expenses

I emphasize, as I did in making my oral ruling on December 18, that the scope of this ruling is narrow.  The only issue fairly presented is whether the defendant is entitled to sanctions in the form of an order compelling the continued deposition of Dr. Lee in Texas at the plaintiff's expense. I make no ruling on whether, in light of the plaintiff's November document production, a continued deposition of Dr. Lee, or any other witness, is appropriate, in which locale, or at what time.

At the teleconference, the defendant's counsel sought guidance on the locale of any continued deposition of Dr. Lee.  I advised counsel to review my earlier ruling of August 25, 2008, resolving a dispute over the location of Dr. Lee's deposition, *see* Report of Hearing and Order re: Discovery Dispute (Docket No. 46), to consider the extent to which the current circumstances are similar or different, and to attempt to resolve any fresh dispute amicably.

At the close of the teleconference, the plaintiff's counsel made an oral motion for sanctions pursuant to Federal Rule of Civil Procedure 37(a)(5)(B) in the form of the plaintiff's reasonable expenditures incurred in opposing the instant motion to compel.  Considering all of the circumstances, I denied that motion.  *See* Fed. R. Civ. P. 37(a)(5)(B).

For the foregoing reasons, the defendant's motion to compel the continued deposition of Dr. Lee and for sanctions, and the plaintiff's oral motion for reasonable expenses incurred in opposing that motion, are ***DENIED***.

***SO ORDERED.***

Dated this 19th day of December, 2008.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge

14